# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLEN G. LOPEZ,<br><br>   *Plaintiff,*<br>v.<br><br>NANCY A. BERRYHILL,<br>**Acting Commissioner of Social Security,**<br><br>   *Defendant.* | Civil Action No. 15-4175<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

  **THIS MATTER** comes before the Court on Plaintiff Glen Lopez's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g) of Administrative Law Judge Michal L. Lissek's (the "ALJ") decision regarding Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) Benefits (collectively, "Disability Benefits"). For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is REVERSED and this case is REMANDED to the Commissioner for further proceedings.

**I. STANDARD OF REVIEW AND APPLICABLE LAW**

  **A. Standard of Review**

  This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review, Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003), but her factual findings must be affirmed if they are supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)

1

(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the Plaintiff and corroborated by family and neighbors; and (4) the Plaintiff's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. Appx. 167 (3d Cir. 2014).

**B. The Five-Step Disability Test**

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). Pursuant to her authority under the Act, the Commissioner of Social Security (the "Commissioner") has promulgated

extensive regulations governing claims for DIB and SSI. In claims for both DIB and SSI, the Commissioner applies a five-step test to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4); § 416.920(a)(4).[1] If at any stage of the five-step procedure the Commissioner determines "that the claimant is or is not disabled," the analysis ends and "does not proceed to the next step." Wilford v. Colvin, No. 16-02391, 2017 WL 498719, at *4 (D.N.J. Feb. 7, 2017). The plaintiff bears the burden of proof for the first four steps, but the burden of production shifts to the Commissioner at the fifth step.

At step one, the Commissioner must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §§ 404.1572; 416.972.

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At step two, the Commissioner must determine whether the plaintiff's claimed impairment or combination of impairments are "severe" within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). In determining whether a adult plaintiff's psychological impairments are "severe," the Commissioner must apply the "special technique" or "Psychiatric Review Technique" mandated by 20 C.F.R. §§ 404.1520a (2011); 416.920a (2011). Under this technique, if the

---

[1] Part 404 of Title 20 of the Code of Federal Regulations governs claims for DIB, while Part 416 of the same Title governs claims for SSI. Both parts of the Code of Federal Regulations have been amended at various points since the date of the ALJ's decision. Throughout this Opinion, each citation to the regulations is a citation to the version in effect at the time of the ALJ's decision. Where the regulation in question has been amended, the year of the version in effect as of the date of the Commissioner's decision is included with the citation.

plaintiff's pertinent symptoms, signs and laboratory findings suggest that the plaintiff has a medically determinable mental impairment, the Commissioner must then evaluate the degree of functional limitation arising from the mental impairment. Id. This technique is a "complex and highly individualized process" that includes ratings in four broad areas: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3) (2011); 416.920a(c)(3) (2011). Generally, a plaintiff must show that they have more than "mild" limitations in order to demonstrate the presence of a severe mental impairment. 20 C.F.R. §§ 404.1520a(d)(1) (2011); 416.920a(d)(1) (2011).

At step three, the Commissioner must determine whether the plaintiff's severe impairments meet or medically equal one of the impairments in the Listings. See generally, 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (listing impairments). If the plaintiff's impairments meet the criteria of a listed impairment, "she is considered per se disabled." Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).

Before proceeding to step four, the Commissioner must evaluate the plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A plaintiff's RFC "is the most [the plaintiff] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In considering the plaintiff's RFC, the Commissioner must consider "all medically determinable impairments of which [she] is aware, including [plaintiff's] medically determinable impairments that are not 'severe.'" 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2).

At step four, the Commissioner must determine whether the plaintiff can perform his past relevant work given his RFC. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); Jones, 364 F.3d at 503. If the plaintiff is unable to perform his past relevant work, at step five, the Commissioner

must determine "whether work exists in significant numbers in the national economy that the [plaintiff] can perform given his medical impairments, age, education, past work experience" and RFC. Jones, 364 F.3d at 503; 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

## II. BACKGROUND

### A. Procedural History

Plaintiff alleged that he became disabled on March 11, 2012. Administrative Transcript, ("Tr.") ECF No. 9, 172, 176. His claims were initially disapproved on July 17, 2012. Tr. 108-17. Plaintiff requested that the Agency reconsider his claims, and on November 15, 2012, the Agency again denied his claims. Tr. 118-23.

On November 21, 2012, Plaintiff requested that an Administrative Law Judge review his claims. Tr. 124. Plaintiff appeared at a hearing before ALJ Michal L. Lissek on October 13, 2013, in Newark, New Jersey. Tr. 32-52. Plaintiff was represented by counsel at the hearing. Tr. 32. At this hearing, Plaintiff amended the onset date of his disability to coincide with the date he was last insured for DIB, December 31, 2010. Tr. 51. On November 27, 2013, the ALJ sent a series of interrogatories to a vocational expert ("VE") Patricia Sasona. Tr. 252-59. The VE responded on November 6, 2013. Tr. 261-69. Plaintiff responded to the interrogatories by letter dated December 24, 2013. Tr. 282-83. On February 7, 2014, the ALJ issue his decision, concluding that Plaintiff was not disabled within the meaning of the Act. Tr. 13-26.

On March 25, 2014, Plaintiff requested that the Appeals Council review the ALJ's decision. Tr. 12. The Appeals Council denied Plaintiff's request for review on April 16, 2015, Tr. 1-6. This Action followed: Plaintiff filed his Complaint in this Court on June 19, 2015, ECF No. 1.

**B. General Background**

Plaintiff is a 60 year-old man. Tr. 172, 176. In a disability report accompanying his applications for DIB and SSI,[2] Plaintiff alleged disability due to vertigo, depression and panic disorder. Tr. 207. Plaintiff dropped out of high school, but later obtained a GED in 1980. Tr. 37. He had most recently worked as a general laborer and "slice dash machine operator" for a construction company in 2008. Tr. 38. From 2001 to 2005, plaintiff was incarcerated following a manslaughter conviction. Tr. 38-39. While incarcerated, Plaintiff worked in the prison hospital, cleaning, mopping, and otherwise assisting the nurses. Tr. 42. Prior to his period of incarceration, he had worked for a different construction company in 2001, as a condition of his bail. Tr. 39. Between his release from prison in 2005 and the date he ceased working in 2008, Plaintiff also worked intermittently at a car dealership, washing cars and performing other odd jobs, and as a laborer at two other companies. Tr. 45.

In a function report dated February 17, 2012, Plaintiff reported that he lives in an apartment with friends. Tr. 198. He spends his days preparing meals, attending doctors' appointments when necessary, and watches TV or listens to music. Tr. 198. Although he reported that he does not take care of any pets or other animals, he reported that other individuals care for a cat. Tr. 199. Although he reported only vertigo and psychiatric conditions as causing his disability, he stated that he has certain physical limitations, including difficulty lifting objects weighing more than 15 pounds, and that he can only walk four blocks at a time. Tr. 199, 203. He reported difficulty bending, climbing stairs, squatting, kneeling, completing tasks and maintaining concentration. Tr. 202-03. Plaintiff also stated that "sometimes when bending or standing [he] gets dizzy," which

---

[2] Plaintiff's disability report also shows that he previously applied for DIB, which was denied in 1999. Tr. 194.

6

interferes with his ability to dress, bathe and use the toilet.  Tr. 199.  His inability to stand for too long also interferes with his shaving, and he was "sometimes too depressed to groom."  Tr. 199-200.  He reported no difficulty in shopping for food or preparing his own simple meals, although he does not perform any housework, because it would require "[t]oo much bending and standing" and that "sometimes [Plaintiff is] just too depressed."  Tr. 200, 201.  He is able to travel alone on public transportation, but does not drive because he does not "trust [his] vertigo."  Tr. 201.

While Plaintiff also reported some inability to pay bills or handle a checkbook, he also reported that his ability to handle money has not changed since his condition began.  Tr. 200.

Plaintiff's "hobbies and interests" include watching TV and "music," although he reported that he did not "do to[o] much to[o] often lately" due to his depression.  Tr. 202.  He also reported that he spends time with others four times a week, sometimes less, including having people visit, although he "keep[s] more to" himself and is "not as social" as he once was since the onset of his condition.  Tr. 202.  He reported no difficulties in following "short" verbal instructions or written instructions, but does not cope well with stress or changes to routines.  Tr. 203.  He is also afraid of falling when he gets dizzy.  Tr. 204.

### C. Medical History

The Commissioner has summarized the medical evidence in her brief. See Def. Mem. at 2-7.  The Court finds that the Commissioner has adequately summarized the medical evidence, and hereby ADOPTS her summary, in its entirety.  The Court will address the medical evidence only where necessary to the adjudication of plaintiff's claim in Section III, infra.

### D. Vocational Expert

On November 27, 2013, the ALJ sent a post-hearing interrogatory request to the VE, containing two hypothetical questions.  In the first, the ALJ asked the VE whether a hypothetical

claimant of the same age and work experience as the Plaintiff could perform any of the Plaintiff's past relevant work or could perform any other work existing in significant numbers in the national economy, if the hypothetical claimant:

> is able to do work that can be learned in 1 month or less and that involves simple instructions. He is able to have occasional contact with supervisors and minimal contact with the general public. He is able to work in proximity of coworkers but not together with them. He is able to do work where the routine does not change throughout the day.

Tr. 252. The VE responded that Plaintiff's past relevant work included working as a Construction Worker and as a Cleaner, and that in her opinion such an individual would be able to work as a Cleaner, which plaintiff had done while washing cars working at car dealerships, but would not be able to work as a Construction Worker, "as it would require work in conjunction with other workers and likely require more than occasional contact with supervisors." Tr. 268. The VE also found that such a hypothetical claimant could work as either a Salvage Laborer, Machine Feeder, or Laundry Worker. Tr. 258.

In the second hypothetical, the ALJ asked the VE the same question, but concerning a slightly more limited hypothetical claimant. The ALJ asked the VE to assume the same vocational profile and limitations as those of the individual in the first hypothetical but with the following additional limitations:

> He is unable to keep to a regular work schedule without an unreasonable number of unscheduled absences totaling more than 4 times per month. He is unable to focus more than 50% of an 8 hour day.

Tr. 258. The VE responded that in her opinion, such an individual could perform none of the Plaintiff's past relevant work, and that there was no other work that Plaintiff could perform because all such work "would require regular attendance" and absences of four days each month "would not allow an individual to sustain employment in the competitive labor market." Tr. 269.

8

### E. ALJ Decision

The ALJ determined that Plaintiff met the insured status requirements under the Act through December 31, 2010. Tr. 18. At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, and at step two, the ALJ determined that Plaintiff's bipolar disorder, depression, panic disorder, alcohol abuse and history of barbiturate abuse qualified as severe impairments. Tr. 19. At step three, the ALJ found that none of the impairments individually or collectively met or medically equaled the severity of a listed impairment. Tr. 19-20.

Before moving on to step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels:

> but with the following nonexertional limitations: only work that can be learned in one month or less and that involves simple instructions. He is able to perform jobs that involve occasional contact with supervisors and minimal contact with the general public. He is able to perform jobs that require him to work in proximity of coworkers but not together with them. He is able to perform work where the routine does not change throughout the day.

Tr. 20. In reaching this determination, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not as severe as he suggested, and the ALJ gave only "little weight" to the opinion of Dr. Imran Jamil, Plaintiff's treating psychiatrist. Tr. 20, 23. Dr. Jamil had opined that Plaintiff would be unable to work for a period of 12 months or more, but the ALJ found that his opinion was not supported by contemporaneous treatment notes and was inconsistent with Plaintiff's own reports. Tr. 373, 572. Again, the ALJ made no mention whatsoever of Plaintiff's alleged vertigo.

At step four, the ALJ found that Plaintiff's RFC left him capable of performing his past relevant work as a Cleaner, and that there are other in significant numbers that Plaintiff could

perform, including as a salvage laborer, laundry worker, or machine feeder. Tr. 25. The ALJ thus concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 25.

**III. Analysis**

Plaintiff argues that the ALJ erred for two reasons: first because he failed to properly weigh the opinions of Plaintiff's treating physicians, and second, because the ALJ's hypotheticals to the VE were not consistent with the record. The Court disagrees with Plaintiff's first contention, as the ALJ properly discounted Dr. Jamil's opinion, and there was no other acceptable treating physician's opinion in the record. However, the Court finds that remand is necessary because the ALJ failed to state why he did not include any limitations connected to Plaintiff's alleged vertigo in reaching his RFC determination.

**A. The Opinions of Plaintiff's Treating Physicians**

Plaintiff's argument that the ALJ failed to properly consider the opinion of his treating physicians is meritless.

Under the regulations promulgated by the Commissioner and the law of this Circuit, the opinion of a treating physician concerning the nature and severity of a plaintiff's impairments is entitled to controlling weight where the opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2) (2012), 416.927(c)(2) (2012); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (discussing when controlling weight will be given to a treating physician's opinion). The regulations further provide that where the Commissioner declines to give controlling weight to the opinion of a treating physician, the ALJ must apply a number of factors to determine what weight he should give the treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2)(ii)-(iv), 416.927(c)(2)(ii)-(iv). These are the nature and extent of the treatment relationship (with longer relationships and more involved

treatment entitled to more weight), the extent to which the treating physician's opinion is supported by relevant evidence, particularly medical signs and laboratory findings, the consistency of the opinion, the specialty of the treating physician, and any other factors which tend to support or contradict the opinion. Id. In this Circuit, "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429 (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)). In order to be entitled to controlling weight, the treating physician's opinion must come from an acceptable medical source, which is defined to include a licensed physician or psychologist. 20 C.F.R. §§ 404.1502 (2011), 404.1513(a)(1)-(2) (2011), 416.902 (2011), 416.913(a)(1)-(2) (2011). Nurses are not "acceptable medical sources" under the regulations for claims filed prior to March 27, 2017. St. John v. Acting Comm'r of Soc. Sec., No. 15-8831, 2017 WL 712757, at *4 (D.N.J. Feb. 23, 2017).[3]

Plaintiff argues that the ALJ failed to provide controlling weight to four of his treating physicians: Dr. John Apovian, Nurse Catherine Tendler, Victoria C. Miller, Ph.D, and Dr. Imran Jamil. However, three of these sources do not qualify as treating sources: Nurse Tendler, despite having provided the Plaintiff with significant treatment, is not an "acceptable medical source" and her opinions regarding the Plaintiff's condition cannot be afforded controlling weight. Victoria Miller, Ph.D., examined Plaintiff as a consultative examiner on behalf of the SSA and therefore cannot qualify as a treating source. Finally, there is no indication in the record that Dr. Apovian treated Plaintiff at all. His only statement in the record is a form opining that Plaintiff could not

---

[3] For claims filed after March 27, 2017, licensed advanced practice registered nurses and licensed physician assistants will be considered acceptable medical sources for impairments within their licensed scope of practice. 20 C.F.R. §§ 404.1502(a)(7)-(8), 416.902(a)(7)-(8).

11

work for a period of "more than 30 days but less than 90 days" and was based on a single examination of Plaintiff conducted on the same day Dr. Apovian filled out the form. Tr. 292-94. As there is no indication that Dr. Apovian actually treated Plaintiff, his opinion is not entitled to additional consideration as a treating source.[4]

Thus, the only acceptable treating source who provided an opinion as to Plaintiff's impairments was Dr. Jamil, who opined that Plaintiff's bipolar disorder prevented him from working for twelve months or more. Tr. 372-73, 572. The ALJ gave Dr. Jamil's opinion "little weight" because Dr. Jamil's opinion was inconsistent with his contemporaneous treatment notes. In those notes, Dr. Jamil noted that Plaintiff reported that he was "okay," that Plaintiff was compliant with his medication, and denied any feelings of hopelessness or helplessness. Tr. 23. Dr. Jamil found Plaintiff's insight to be moderate, his judgement fair, and his mood euthymic. Tr. 23, 358. His affect was appropriate, and his memory and language skills were intact. Tr. 359. Dr. Jamil described Plaintiff as "stable" and that his behavior was "controlled." Tr. 359. This contrasts markedly with his assessment that Plaintiff was unable to work for twelve months or more. That opinion, provided on a form issued by the City of Hackensack Department of Human Services to determine whether Plaintiff was capable of complying with the work requirements of another state program, does not include a function by function assessment of Plaintiff's disabilities, but rather is a check-box form that constitutes "weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). The ALJ therefore did not err according Dr. Jamil's assessment little weight. Tr. 23.

---

[4] Elsewhere in his briefing Plaintiff suggests that the opinion of Warren Glick, an advanced practice nurse who opined that Plaintiff could not work for "more than 90 days but less than 6 months" due to a "head injury and dizziness." Tr. 340. As Nurse Glick is also not an acceptable medical source for the purposes of the treating physician rule, the ALJ did not err in not considering this opinion as though it were from a treating source.

## B. Adequacy of the RFC Determination

Although Plaintiff does not directly allege any deficiencies with the ALJ's RFC assessment, the Court finds that the ALJ erred in failing to consider the entirety of Plaintiff's impairments. At this stage of the analysis, the ALJ again, without explanation, ignored Plaintiff's alleged vertigo, despite Dr. Apovian's statement that Plaintiff's vertigo prevented him from working, Nurse Tendler's notes indicating that Plaintiff suffered from vertigo (including that he was taking medication, Meclizine, prescribed to treat the condition), and Plaintiff's allegations and hearing testimony that vertigo prevented him from working. Tr. 49-51, 207, 293, 296, 314.

In determining a plaintiff's RFC, the ALJ must consider "all of [Plaintiff's] medically determinable impairments of which [he is] aware, including [Plaintiff's] medically determinable impairments that are not 'severe.'" 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). At this stage of the analysis, the ALJ must make "a complete assessment of the claimant's physical and mental functional limitations based on relevant medical and nonmedical evidence of a claimant's impairments. If the ALJ decides to reject any evidence, medical or otherwise, he must provide reasons for the rejection to enable meaningful judicial review." Harris v. Comm'r of Soc. Sec., No. 11-2961, 2012 WL 4504486, at *7 (D.N.J. Sept. 27, 2012) (citation omitted).

Although the ALJ did not conclude that Plaintiff's vertigo was a "severe" impairment at step two of the analysis, he makes no mention of the condition at any point in his decision. Later in the process, when determining Plaintiff's RFC, the ALJ again did not mention Plaintiff's vertigo, nor did he include any limitations in his RFC determination clearly designed to accommodate Plaintiff's vertigo. His decision does not record whether he somehow thought that Plaintiff's vertigo did not qualify as a medically determinable impairment, did not conclude that

13

any limitation from the impairment would be de minimis or that any limitations from Plaintiff's alleged vertigo would be accounted for in other limitations already included in Plaintiff's RFC. Instead, the ALJ simply never mentioned plaintiff's vertigo whatsoever.

This was error. While an ALJ is not required to accept that Plaintiff indeed suffered from vertigo (and there is evidence in the record to be skeptical of his claims[5]), the ALJ was not free to simply ignore the allegation of impairment without elaboration. An ALJ is required to explain his reasoning for accepting or rejecting medical evidence, and must "explain his conciliations and rejections." Curry v. Comm'r of Soc. Sec., No. 15-7515, 2017 WL 825196, at *2 (D.N.J. Mar. 2, 2017) (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000)). "While the ALJ need not discuss every piece of evidence included in the record, she must explain her reasons for discounting contradictory evidence," and must provide a sufficiently clear explanation to permit the Court to meaningfully review any decision. White v. Colvin, No. 13-3991, 2015 WL 1523068, at *3 (D.N.J. Apr. 2, 2015). If the ALJ fails to provide an explanation of his reasoning, the Court is unable to meaningfully review the decision and must reverse and remand the matter.

Here, as the ALJ has not set forth any reason for not addressing Plaintiff's alleged vertigo, the Court is unable to meaningfully review the ALJ's RFC determination. The Court will therefore reverse the decision of the Commissioner and remand this action. On remand, in determining Plaintiff's RFC, the ALJ must clearly set forth his reasoning as to whether a certain condition,

---

[5] Amy Brams, Ph.D., a state agency psychologist who reviewed Plaintiff's application opined that Plaintiff's vertigo was strictly comorbid with Plaintiff's alcoholism, and that it should not be independently considered as a separate impairment. Tr. 57, 70. Because the ALJ did not elaborate as to why he failed to consider Plaintiff's vertigo as part of his RFC, the Court cannot determine whether he found Dr. Brams's determination persuasive, or whether he declined to include limitations from vertigo in the RFC for any other reason.

symptom or limitation requires inclusion in Plaintiff's RFC, and where the ALJ determines that an alleged impairment should not factor into Plaintiff's RFC, he must set forth his basis for that decision to enable this Court to meaningfully review his determination.

### C. Whether the Hypothetical Questions to the VE Were Consistent With the Record

As his final basis for remand Plaintiff argues that the ALJ's hypothetical questions to the VE were not consistent with the record in this action. As the Court has concluded that remand is necessary to permit the ALJ to set forth his reasons in reaching the RFC determination, the Court declines to address this alternate basis for remand.

### IV. CONCLUSION

Because the Court finds that the ALJ failed to properly explain his reasoning behind the RFC determination, the determination of the Commissioner is **REVERSED** and this action is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion.

Date: April 30, 2019 /s/ **Madeline Cox Arleo**
Hon. Madeline Cox Arleo
UNITED STATES DISTRICT JUDGE